IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN T. SIMCIC, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-0802 |
| | ) | United States Magistrate Judge |
| THE PITTSBURGH WATER AND SEWER | ) | Cynthia Reed Eddy |
| AUTHORITY, DANIEL DEASY, | ) | |
| SCOTT KUNKA, and PATRICK DOWD, | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION REGARDING
MOTION TO DISMISS COMPLAINT**

**I.     RECOMMENDATION AND INTRODUCTION**

Plaintiff Stephen T. Simcic was the Director of Finance and Business for the Pittsburgh Water and Sewer Authority (the "Authority") when he was involuntarily terminated on September 14, 2012. Plaintiff filed a two count complaint against the Authority and three of its Board members, Daniel Deasy, Scott Kunka and Patrick Dowd, stating claims for common law breach of contract (Count I) and violation of his civil rights, namely his right to substantive and procedural due process prior to his termination, under 42 U.S.C. § 1983 (Count II). Jurisdiction is predicated upon 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1367 (supplemental jurisdiction).

Plaintiff alleges he was employed by the Authority since 2001 without blemish, that he rose up the ladder to become Director of Finance and Business in 2009, that he became Acting Co-Executive Director of the Authority in December 2010 while the Authority sought a permanent Executive Director, that until his termination on September 14, 2012, he had always received positive evaluations, including praise for his performance as Acting Co-Executive Director, and that he "was led to believe" by Defendants that he would continue to serve as

1

Director of Finance and Business after an Executive Director was appointed. Complaint (ECF No. 1), at ¶¶ 7-16. According to Plaintiff, he "had a contract with Defendant [the Authority], which had both express and implied terms, and both written and oral terms," confirming Defendants' assurances and promises of continued employment and the parties' understanding that Plaintiff would continue to work as Director of Finance and Business once the Executive Director was appointed, but instead, he was terminated without cause, and without procedural or substantive due process, on September 14, 2012. Complaint (ECF No. 1), at ¶¶ 17-31.

Although Plaintiff asserts that he and the Authority "had a contract . . . which had both express and implied terms, and both written and oral terms," there is no written contract between Plaintiff and the Authority described in or attached to the Complaint. The "written terms" Plaintiff references are set forth in Agreements between the Authority and Veolia Water Company North America – Northeast, LLC ("Veolia"), an outside consulting company. Complaint (ECF No. 1), at ¶¶ 16-17, 26-27. (The eventual Executive Director chosen, James L. Good, was an employee of Veolia.) In those Agreements, the contracting parties expressed their intent to keep the management team intact, including Plaintiff. *Id*.

Defendants have filed a Motion to Dismiss Plaintiff's Complaint (ECF No. 5) pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim. Defendants assert there was no express or implied contract between the parties, and that even if there were, the Authority had no authority to enter into a contract of continued employment or one subject to "just cause" limitations on the at-will relationship, and that any such contract or understanding would, therefore, be a nullity under Pennsylvania law.

The Court has carefully reviewed the motion to dismiss, Plaintiff's response, and the briefs in support and in opposition to the motion, and agrees with Defendants that, assuming the

truth of the facts alleged in the Complaint, and taking all reasonable inferences in Plaintiff's favor, Plaintiff is unable to overcome the presumption of at-will employment, and cannot state a common law breach of contract claim or a civil rights claim under section 1983. Therefore, this Court recommends that the motion to dismiss be granted as to both counts, with prejudice, and the complaint dismissed, for the reasons stated below.

## II. REPORT

### A. Standards on Motion to Dismiss Pursuant to Rule 12(b)(6)

In light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint may be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. Co. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). While *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) allowed dismissal of a claim only if "no set of facts" could support it, under *Twombly*, and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a claim for relief under Rule 12(b)(6) now "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

In *Iqbal*, the Supreme Court held that a claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). The plausibility standard in *Iqbal* "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. While well-pleaded factual content is accepted as true for purposes of whether the complaint states a plausible claim for relief, legal conclusions couched as factual allegations or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to an assumption of truth. *Iqbal*, 566

U.S. at 678. "Where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 566 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). In order to satisfy the requirement of Fed.R.Civ.P. 8(a)(2) that a plaintiff include a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must aver sufficient factual allegations which "nudge" its claims "across the line from conceivable to plausible." *Id*.

As the Court of Appeals for the Third Circuit explained in *Fowler*, 578 F.3d at 210–11:

> . . . The Supreme Court's opinion in *Iqbal* extends the reach of *Twombly*, instructing that all civil complaints must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949.
>
> Therefore, after *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id*. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, ... [the] "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

*See also Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679); *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir. 2011), *cert. denied*, ––– U.S., ––– 132 S.Ct. 1861 (2012); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

In considering a Rule 12(b)(6) motion, a court accepts all of the plaintiff's allegations as true and construes all inferences in the light most favorable to the non-moving party. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008) (citing *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006)). However, a court will not accept bald assertions, unwarranted

inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n. 8 (3d Cir. 1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).

Therefore, a plaintiff must put forth sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315 (3d Cir. 2008) (citing *Phillips*, 515 F.3d at 224). This standard does not impose a heightened burden on the claimant above that already required by Rule 8, but instead calls for fair notice of the factual basis of a claim while raising a "reasonable expectation that discovery will reveal evidence of the necessary element." *Weaver v. UPMC*, 2008 WL 2942139, *3 (W.D.Pa. 2008) (citing *Phillips*, 515 F.3d at 234; and *Twombly*, 550 U.S. at 555).

**B. Controlling Substantive Law and Application**

**1. Due Process**

The Fourteenth Amendment to the United States Constitution states, in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. 14; *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 755 (2005). The Due Process Clause mandates both procedural and substantive due process for the personal interests it protects. *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (citing *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 846–47 (1992); s*ee also Gonzales*, 545 U.S. at 755-56 (acknowledging substantive and procedural components of Due Process Clause).

5

Section 1983 provides remedies for deprivations of the rights established by the Constitution, including the rights to procedural and substantive due process under the Fourteenth Amendment. 42 U.S.C. § 1983; *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). The first step in evaluating a section 1983 claim, however, is to "identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008).

### 2. Procedural Due Process

"The procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit': 'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Gonzales*, 545 U.S. at 756 (quoting *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972)). A "benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Gonzales*, 545 U.S. at 756 (citing *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 462-463 (1989)).

"As an initial matter, state law determines whether such a property interest exists." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (citing *Bd. of Regents* and *Brown v. Trench*, 787 F.2d 167, 170 (3d Cir. 1986) (additional citation omitted)); *Bishop v. Wood*, 426 U.S. 341, 344 (1976). *See also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) ("Respondents' federal constitutional claim depends on their having had a property right in continued employment."); *Lane v. Bonin*, 772 F.Supp.2d 678, 688 (W.D.Pa. 2011) ("for purposes of procedural due process, [w]hether a public employee has a property interest in continued employment is a question of state law.") (citing *Bishop, inter alia*); *Blanding v. Pennsylvania State Police,* 811 F.Supp. 1084, 1091 (E.D.Pa. 1992), *aff'd* 12 F.3d 1303 (3d Cir.

1993) ("procedural due process protections of the Fourteenth Amendment apply only to deprivations of property interests, the existence of which are created and 'defined by existing rules or understandings that stem from an independent source such as state law.'") (citing *Bd. of Regents*, 408 U.S. at 577; *Demko v. Luzerne County Cmty. Coll.*, 113 F.Supp.2d 722, 728 (M.D.Pa. 2000) (to have a property interest in a governmental position, protected by the Due Process Clause, a person must have a legitimate claim of entitlement to it).

To have a property interest in a job, "a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment. . . . [A]n at-will employee does not have a legitimate entitlement to continued employment because she serves solely at the pleasure of her employer." *Elmore*, 399 F.3d at 282 (citing *Bd. of Regents*, 408 U.S. at 577 and *Chabal v. Reagan*, 841 F.2d 1216, 1223 (3d Cir. 1988). "Courts have recognized that a 'for-cause' termination provision in an enforceable employment agreement or statute may establish a protected property interest." *Demko*, 113 F.Supp.2d at 728 (citations omitted). Once a court determines a public employee held her position at the will of the governmental entity, such a finding "necessarily establishes that [the employee] had no property interest' in the job sufficient to trigger due process concerns." *Elmore*, 399 F.3d at 282 (citing *Bishop*, 426 U.S. at 346 n.8).

The presumption that employment is at-will in both the private and public sectors is firmly established and consistently applied in Pennsylvania. In *Scott v. Philadelphia Parking Auth.*, 402 Pa. 151, 166 A.2d 278 (1961), the Pennsylvania Supreme Court held that the statute creating the Parking Authority and conferring upon it the power to, *inter alia,* appoint officers, employees and agents and fix their compensation, did not grant authority to contract away its right to summarily discharge its managing director or other officers, agents and employees, who

remain at-will employees subject to summary dismissal. Thus, "the act of the prior members of the Authority in entering into an employment contract with the appellee was beyond their power," and the contract retaining the Authority's managing director for a three-year period was invalid and unenforceable. *Id*. at 166 A.2d 283. The Pennsylvania Supreme Court explained:

> Without more, an appointed public employee takes his job subject to the possibility of summary removal by the employing authority. He is essentially an employee-at-will. . . . [G]ood administration requires that the personnel in charge of implementing the policies of an agency be responsible to, and responsive to those charged with the policy-making function, who in turn are responsible to a higher governmental authority, or to the public itself, whichever selected them. This chain of responsibility is the basic check on government possessed by the public at large. . . .
>
> Tenure in public employment, in the sense of having a claim to employment which precludes dismissal on a summary basis, is, where it exists, a matter of legislative grace. It represents a policy determination that regardless of personality or political preference or similar intangibles, a particular job, to be efficiently fulfilled, requires constant and continuous service despite changes in political administration. In general, the legislature has conferred tenure as an integral part of a comprehensive governmental employment scheme such as those embodied in the Civil Service Act or the Teacher Tenure Acts. . . .

*Id*. at 166 A.2d 280-81 (footnotes, citations and internal quotation marks omitted).

"Furthermore," the Court stated, "where the legislature has intended that tenure should attach to public employment, it has been very explicit in so stating," as for example, in the Public School Code which expressly recognizes tenure for public school professional employees and restricts the public employer's ability to terminate employment without cause. *Id*. at 281. The enabling legislation by which the Philadelphia Parking Authority was created granted it "the general power to make contracts of every name and nature." Nevertheless, the Supreme Court held that the legislation lacked the explicit language that would alter the at-will presumption, stating:

8

> The power granted to the Authority under its enabling legislation is to appoint officers, employees and agents and to fix their compensation, not to enter into contracts of employment. Clearly, absent the contract, the Authority would have had the power to discharge the appellee summarily. If the Authority has the power to contract away this right which under sound principles of law and public policy is fundamental to a scheme of good government, it must be set forth expressly in the enabling legislation. . . .
>
> A power to confer tenure by contract most assuredly does not derive from the general grant of powers necessary and convenient to carry out the purposes of the Authority, nor from the general power to make contracts of every name and nature. . . . The contract here called for the employment on an annual basis of a close and confidential employee of a public body responsible for its daily management and supervision. . . . Since no legislative authority exists which permits a contract of this nature, the instant contract is invalid and unenforceable in its entirety.

*Id*. at 282 (footnote and citations omitted).

In 1995, the Pennsylvania Supreme Court held that a local government in Pennsylvania cannot provide its employees with tenure or with "just cause" protections unless there is express legislative authority. *Stumpp v. Stroudsburg Mun. Auth*., 540 Pa. 391, 658 A.2d 333, 334 (1995) ("The law in Pennsylvania is abundantly clear that, as a general rule, employees are at-will, absent a contract, and may be terminated at any time, for any reason or for no reason."). In 1997, the Pennsylvania Supreme Court reaffirmed *Scott* and *Stumpp* in an unanimous Per Curiam Opinion. In *Short v. Bor. of Lawrenceville*, 548 Pa. 265, 696 A.2d 1158 (1997), the Court found that any implied contractual provision in the personnel manual that called for "due process" in connection with the dismissal of any municipal employee did not create a property right, nor did it equitably estop the Borough from dismissing the employee without a hearing. "Commonwealth authorities and agencies do not have the power to enter into contracts of employment that contract away the right of summary dismissal," nor can a "handbook or personnel manual issued by a Commonwealth agency [be considered] a legislative action in itself

and cannot be considered a contract guaranteeing a property right in employment unless the legislature has so provided." *Id*. at 696 A.2d 1158.

The presumption that public employees are at-will in the absence of explicit, unambiguous language in the enabling legislation retains its vitality in Pennsylvania, and informs the threshold question in due process cases -- whether the Plaintiff has a protected property interest in continued employment? In 2005, the United States Court of Appeals for the Third Circuit held that an office manager for Huntington Township, Pennsylvania was an at-will employee without any property interest in her job sufficient to implicate due process, notwithstanding the Township's personnel policy handbook stating that it would take no disciplinary action against an employee without just cause. *Elmore*, 399 F.3d at 282. The Court of Appeals recognized that "state law determines whether such a property interest [in one's job] exists," and that "under controlling Pennsylvania law, a 'public employee takes his job subject to the possibility of summary removal by the employing authority. He is essentially an employee-at-will.'" *Id*. at 282 (quoting *Scott*, 166 A.2d at 280; additional citations omitted). "Stated otherwise, a public employee in Pennsylvania generally serves at the pleasure of her employer and thus has no legitimate entitlement to continued employment." *Id*. at 282. Therefore, Ms. Elmore had no protected property interest in continued employment with the Township.

The well-worn expression "it is well-established law" aptly applies in this case, considering the consistent body of state and federal precedent in Pennsylvania upholding the presumption of at-will employment for public employees in the absence of *explicit* language in the enabling legislation. *See, e.g., Grabiak v. Pennsylvania State Police,* 276 F.App'x 210, 212 (3d Cir. 2008) (whether Plaintiff state trooper had due process rights "protected by the Fourteenth Amendment before the state could terminate him depends on whether Grabiak had a

10

property interest in his employment. . . . Employment in Pennsylvania, including government employment, is generally at-will unless otherwise provided by [valid] contract or statute.") (citing *Pipkin v. Pennsylvania State Police*, 548 Pa. 1, 693 A.2d 190, 191 (Pa. 1997) (at-will employment means employees "may be terminated at any time, for any reason or for no reason")); *Lane*, *supra* (Pennsylvania state trooper had no property interest protected by due process; in Pennsylvania, state agency may not create tenure unless the legislature specifically grants the agency power to do so; therefore, a public employer or authority may not enter into a contract with its employees that gives away its right of summary dismissal unless specifically granted such authority by the legislature); *Lord v. Erie County*, 2010 WL 56095, *7 (W.D.Pa. 2010) (training coordinator for County Department of Corrections had no property interest in continued employment because, under Pennsylvania law, an "implied contract is not enough to give rise to a property interest in continued employment" sufficient to "establish a property interest (and a corresponding right to procedural due process) in his continued employment."); *D'Altilio v. Dover Tp.*, 2007 WL 2845073, *4, *6 (M.D.Pa. 2007) (plaintiff, former Director of the Dover Township Department of Public Works, could not pass the due process threshold, i.e., the existence of a property right protected by due process: "Under Pennsylvania law, employment with the Commonwealth or its municipalities is at-will unless the General Assembly has enacted legislation allowing it to be altered. . . . Without enabling legislation, Pennsylvania municipalities have no power to alter the at-will status of their employees."); *Guerra v. Redev. Auth. of Phila.*, 27 A.3d 1284, 1294 (Pa.Super. 2011) ("The holding of *Scott* has not been abrogated by the Supreme Court of Pennsylvania or by the legislature."); *Wilson v. County of Montgomery,* 2011 WL 10876908, *3 (Pa.Cmwlth. 2011) (Plaintiff, former assistant Support Conciliator in Montgomery County's Domestic Relations Section, had no property interest in

11

continued employment: "Even if the Memorandum [plaintiff] signed could be construed as an employment contract, the County acted beyond its powers by entering into such an agreement, making it void and unenforceable as an *ultra vires* act of the County.") (citing *Clairton Slag, Inc. v. Dep't of Gen. Serv.*, 2 A.3d 765, 782 (Pa.Cmwlth. 2010).

Because Plaintiff, an at-will public employee, did not have a protected property interest in continued employment, he cannot pass the procedural due process threshold, and this claim must be dismissed. Dismissal must be with prejudice, because any amendment would be futile given Plaintiff's affirmative admissions about the status of his employment and the specific reliance upon statutes that do not contain the requisite explicit language granting the Authority power to contract for terms of years or to give away its power to discharge employees summarily.

### 3. Substantive Due Process

In *Nicholas*, the Court of Appeals for the Third Circuit held that Professor Nicholas' property interest in his tenured professorship was not entitled to substantive due process protection. The Court explained that the "fabric of substantive due process, as woven by our courts, encompasses at least two very different threads." *Nicholas*, 227 F.3d at 139. The first thread is "when a plaintiff challenges the validity of a legislative act," which "will withstand substantive due process challenge if the government 'identifies a legitimate state interest that the legislature could rationally conclude was served by the statute,' although legislative acts that burden certain 'fundamental' rights may be subject to stricter scrutiny. *Id*.

The second thread, the one implicated in this case, protects against "certain types of non-legislative state action." *Id*. A "non-legislative government deprivation that comports with procedural due process may still give rise to a substantive due process claim upon allegations

12

that the government deliberately and arbitrarily abused its power." *Lane*, 772 F.Supp.2d at 687 (internal quotation marks omitted) (quoting *Nicholas*, 227 F.3d at 139). A property interest within the ambit of substantive due process may not be taken away by the state for reasons that are "arbitrary, irrational, or tainted by improper motive," or "by means of government conduct so egregious that it 'shocks the conscience.'" *Id*. (numerous citations omitted). *See also Chainey*, 523 F.3d at 219-20 (deprivation violates due process only when it "shocks the conscience, which encompasses only the most egregious official conduct.") (quoting *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003)) (additional citation and internal quotation marks omitted).

To state a substantive due process claim, "a plaintiff must have been deprived of a particular quality of property interest." *Id*. (quoting *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 598 (3d Cir. 1995). To prosecute a non-legislative substantive due process claim, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Nicholas*, 227 F.3d at 139-40 (quoting *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000)). Whether a "certain property interest embodies this 'particular quality' is not determined by reference to state law, but rather depends on whether that interest is 'fundamental' under the United States Constitution." *Id*. at 140 (numerous citations omitted). In summary, the Court of Appeals for the Third Circuit stated:

> [W]hen a plaintiff challenges a non-legislative state action (such as an adverse employment decision), *we must look, as a threshold matter, to whether the property interest being deprived is "fundamental" under the Constitution.* If it is, then substantive due process protects the plaintiff from arbitrary or irrational deprivation, regardless of the adequacy of procedures used. If the interest is not "fundamental," however, the governmental action is

13

> entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process.

*Id*. at 142 (emphasis added). *See also Gikas v. Washington School Dist.*, 328 F.3d 731, 736 (3d Cir. 2003) (to sustain substantive due process claim, plaintiffs must have been deprived of fundamental property interest under the Constitution).

"[O]wnership is a property interest worthy of substantive due process protection." *Chainey*, 523 F.3d at 219 (quoting *DeBlasio*, 53 F.3d at 600), overruled on other grounds by *United Artists*, 316 F.3d at 401. However, fundamental rights "are relatively few in number. At present, the United States Court of Appeals for the Third Circuit has applied substantive due process protection to the right to own real property, but it has repeatedly declined to extend that protection to other rights, including those such as public employment, created by state law." *D'Altilio*, 2007 WL 2845073 at *4, *6 (citing *Nicholas*, 227 F.3d at 140-41 and *Gikas v. Wash. Sch. Dist.*, 328 F.3d 731, 736 (3d Cir. 2003) (employment preference granted to veterans in public hiring process not a fundamental property right) (additional citations omitted).

In *Nicholas*, the Court of Appeals considered the question "whether Nicholas's tenured public employment is a fundamental property interest entitled to substantive due process protection . . . [,]" and found that it was not. 227 F.3d at 138. A public employee discharged from his or her job lacks the requisite fundamental property interest sufficient to support a substantive due process claim. Because Plaintiff's own detailed Complaint shows that he is an at-will public employee, he cannot cross the "fundamental right" substantive due process threshold inquiry, and his claim must be dismissed. Dismissal must be with prejudice, because any amendment would be futile given Plaintiff's affirmative admissions about the status of his employment and

the specific reliance upon statutes that do establish a fundamental property right in continued public employment.

4. **Equitable Estoppel**

Plaintiff further argues that the Authority should be equitably estopped from attempting to avoid its contractual obligations by claiming it was beyond its power to enter into employment contracts with employees on anything but an at-will basis. This argument is of no avail for, as the Pennsylvania Supreme Court has stated, "equitable estoppel has been affirmatively rejected by this Court as an exception to the at-will rule." *Stumpp,* 658 A.2d at 336 (quoting *Paul v. Lankenau Hosp.,* 524 Pa. 90, 569 A.2d 346, 348 (1990) ("doctrine of equitable estoppel is not an exception to the employment at-will doctrine. An employee may be discharged with or without cause, and our law does not prohibit firing an employee for relying on an employer's promise.").

The Court finds that Plaintiff's reliance on the doctrine of estoppel is in conflict with the Pennsylvania Supreme Court rulings in *Lankenau Hosp.* and, more recently, *Stumpp*. See also *Dyche v. Bonney*, 277 F.App'x 244 (3d Cir. 2008) ("Dyche's promissory estoppel theory is invalid under Pennsylvania law. *See Paul v. Lankenau Hosp.,* . . ."); *Wilson v. County of Montgomery*, 2011 WL 10876908, *3 (Pa.Cmwlth. 2011) (citing *Lankenau Hosp.*). Accordingly, Plaintiff's estoppel argument is without merit.

5. **Breach of Contract**

Ordinarily, upon dismissing all federal claims at an early stage of litigation, this Court would decline to entertain supplemental jurisdiction over state law claims under 28 U.S.C. § 367, and would dismiss without prejudice to Plaintiff pursuing her claims in state court. *See, e.g. Wells v. Miller,* 2009 WL 2981945,*17 (W.D.Pa. 2009). However, it is a matter of discretion

whether to decline jurisdiction in such cases, as District Judge Conti of this Court explained in *Wells*:

> "The district courts *may* decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims *unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so*." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir.1995). This court declines to exercise supplementary jurisdiction over the state court claims in this action. The state law claims will be dismissed without prejudice to the plaintiff's right to file the state law claims in state court.

*Id*.

Plaintiff identifies the following sources of his purported alleged oral or written contract with the Authority: (1) oral assurances or promises made by various management persons at the Authority that he would resume his position as Director of Finance and Business after the Executive Director was chosen; (2) several newspaper articles stating that the Authority intended to retain Plaintiff; (3) a Certification of Appreciation recognizing his performance as Acting Co-Executive Director; (4) a Resolution by the Authority expressing its appreciation of Plaintiff's services and its intent to keep him as part of the management team; (5) e-mails sent on behalf of Interim Executive Director Good acknowledging and expressing his appreciation of Plaintiff's services; and (6) agreements between the Authority and Veiola stating, *inter alia*, their mutual intention to keep the management team intact. Whether a binding contract could be gleaned from these oral and written sources is questionable, but given the Court's finding that any such contract would be null and void under Pennsylvania law, the Court need not and does not resolve this issue.

In this case, the federal question-due process analysis *necessarily* disposes of the state law breach of contract claim, relitigation of which would be precluded by issue preclusion (a/k/a collateral estoppel) upon entry into state court. Issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination." *Nationwide Mutual Fire Ins. Co. v. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009). *See also R & J Holding Co. v. Redev. Auth. of County of Montgomery,* 670 F.3d 420 (3d Cir. 2011) and *Office of Disc. Counsel v. Kiesewetter*, 585 Pa. 477, 484, 889 A.2d 47, 50–51 (2005). Even if the state court were to find that an employment contract existed between Plaintiff and Defendants, any such contract would be null and void *ab initio*, because this Court has found that the Authority has no power to enter into a binding employment contract that gives up its right to summarily discharge its employees.

The Court deems it to be in the best interests of judicial economy, convenience, and fairness to the parties to dismiss the breach of contract claim, also with prejudice since Plaintiff cannot, as a matter of law, surmount the hurdle that the Authority lacked power to bargain away its right to summarily discharge Plaintiff.

III.     CONCLUSION

For the foregoing reasons, IT IS RESPECTFULLY RECOMMENDED that the Court grant Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 5) pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim, and dismiss Plaintiff's complaint, with prejudice, on both Counts.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, Objections to this Report and Recommendation are due by November 12, 2013. Failure to timely file Objections will constitute waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all ECF registered counsel